<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARK BALSAM, CHARLES DONAHUE, HANS HENKES, REBECCA FELDMAN, JAIME MARTINEZ, WILLIAM CONGER, TIA WILLIAMS, INDEPENDENT VOTER PROJECT, and COMMITTEE FOR A UNIFIED INDEPENDENT PARTY, INC., <br><br> Plaintiffs, <br> v. <br><br> KIM GUADAGNO, in her official capacity as New Jersey Secretary of State, <br><br> Defendant. | Civil Action No. 14-01388 (SRC) <br><br> **OPINION** |

<u>**CHESLER**</u>, <u>District Judge</u>

The Complaint filed in this case challenges the manner in which New Jersey conducts its primary elections, the process by which political parties as defined by New Jersey law choose candidates for a general election.  The Complaint raises a number of claims under the federal Constitution and its New Jersey counterpart.  Plaintiffs are a collection of individual voters and not-for-profit entities who ask this Court to enter judgment (1) declaring unconstitutional certain laws governing New Jersey's primary elections and the way those elections are funded, and (2) ordering Defendant Kim Guadagno ("Defendant") to "implement a constitutional . . . primary election system." (Compl. at 20.)  Defendant now moves to dismiss the Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  [Docket Entry 11.]  For the foregoing reasons, the motion will be granted, and the Complaint dismissed with prejudice.

## BACKGROUND

Under New Jersey law, general elections are held "on the Tuesday next after the first Monday in November . . . ." N.J. Stat. Ann § 19:2-3. Primary elections, by which "the members of a political party in this State or any subdivision thereof nominate candidates to be voted for at the general elections," N.J. Stat. Ann. § 19:1-1, are held the preceding June. See N.J. Stat. Ann. § 19:2-1. Pursuant to N.J. Stat. Ann. § 19:45-1, all "primary elections for general elections and primary elections for delegates and alternates to national conventions" are "conducted at the expense of the state or its political subdivisions." According to the Complaint, "New Jersey spent at least $12 million conducting non-presidential special primary elections" in 2013. (Compl. ¶ 34.)

New Jersey, similar to at least a dozen other states, limits participation in primary elections to members of the political party conducting the primary. N.J. Stat. Ann. § 19:23-45.[1] This process is known as a "closed" primary. States differ regarding the steps a prospective primary voter must takes to be eligible to participate in the primary; New Jersey conditions that right on a voter being either "newly registered at the first primary at which he is eligible to vote" or "deemed . . . a member of that party" fifty-five days before the primary election. Id. There is no dispute that the only political parties currently recognized by New Jersey law are the Republican and Democratic parties. See N.J. Stat. Ann. § 19:1-1 (defining "political party" to mean any party that garners "at least 10% of the total vote cast" in the last statewide election for New Jersey's General Assembly).

Candidates who are unaffiliated with a "political party" – read, those who are not Republicans or Democrats – and who seek placement on the general election ballot do so by way

---

[1] For instance, Pennsylvania, Delaware, and New York all conduct "closed" primaries. See 25 Pa. Cons. Stat. § 2812; Del. Code. Ann. tit. 15, § 3110; N.Y. Elec. Law §§ 5-300 to -310.

of a statutorily prescribed "petition" process.  See N.J. Stat. Ann. §§ 19:13-3 to -13.  As the Third Circuit describes this process, unaffiliated candidates "bypass the primary election and proceed directly to the general election" upon submission of a petition that comports with New Jersey law and which contains the requisite amount of signatures.  See Council of Alternative Political Parties v. Hooks, 179 F.3d 64, 68-69 (3d Cir. 1999).  In many ways, the direct nomination by petition process presents lower ballot access hurdles to a candidate for public office than does the primary process.  See id. at 79.  For instance, unaffiliated gubernatorial candidates need to collect fewer signatures than their political party counterparts; unaffiliated candidates also receive nearly two months more time to gather signatures for a general election nominating petition than do those candidates seeking access to a primary election ballot.  See id. at 68.

Plaintiffs allege this statutory regime, and specifically N.J. Stat. Ann. § 19:23-45, constitutionally "disenfranchises" them and violates their First and Fourteenth Amendment rights, including their associational and non-associational rights and their rights under the Equal Protection clause.[2]  According to Plaintiffs, the fundamental right to vote extends to primary elections, (Compl. ¶ 1), and New Jersey violates this right by conditioning primary participation on voter affiliation "with a political party approved by the State . . . ."  (See id. at ¶ 2.)  Consequently, by denying New Jersey's 2.6 million registered unaffiliated voters "the right to cast a vote in primary elections, the State has disenfranchised nearly half of its electorate . . . ."  (Id. at ¶ 5.)  The Complaint also asserts a trio of state law claims, two of which – for violations of the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2(c) and the right to vote secured by

---

[2] The Complaint asserts a claim under 42 U.S.C. § 1983 (Count One), as well as three separate federal constitutional claims (Counts Three, Five, and Six).  The Court exercises jurisdiction over these causes of action pursuant to 28 U.S.C. § 1331.

3

Article II, Section I of the New Jersey Constitution – mimic Plaintiffs' federal claims. The third state law claim alleges that because primary elections are "conducted at the expense of the state," N.J. Stat. Ann. § 19:45-1, those elections unconstitutionally appropriate public funds for a private purpose in violation of Article VIII, Section III of the New Jersey Constitution. (Compl. ¶ 72.)[3]

Defendant now moves to dismiss, arguing that N.J. Stat. Ann. §19:23-45 is a constitutionally permissible way to regulate the manner in which political parties select their candidates for the general election ballot. (Mov. Br. at 13, 18.) Defendant also contends that all three state law claims should be dismissed on Eleventh Amendment sovereign immunity grounds and that Plaintiffs lack standing to assert their Article VIII, Section III claim. (See Mov. Br. at 19, 21.)

## DISCUSSION

### A. Federal Constitutional Claims

Any attempt to use the Constitution to pry open a state-sanctioned closed primary system is precluded by current Supreme Court doctrine, and Plaintiffs' federal claims must therefore be dismissed. Specifically, "[t]he Supreme Court has emphasized – with increasing firmness – that the First Amendment Guarantees a political party great leeway in governing its own affairs." Maslow v. Bd. of Elections of City of New York, 658 F.3d 291, 296 (2d Cir. 2011) (citing, *inter alia*, N.Y. State Bd. of Elections v. Lopez Torres, 552 U.S. 197 (2008), Cal. Democratic Party v. Jones, 530 U.S. 567 (2000), and Tashjian v. Republic Party of Conn., 479 U.S. 208 (1986)).

---

[3] The state law claims (Counts Two, Four, and Seven) are before the Court pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367(a). (See Compl. ¶ 9.) Count Eight, which alleges that the closed primary system "affords private political parties special access to the voting franchise" in violation of the federal and New Jersey constitutions, appears to be a duplicative amalgamation of the first seven claims.

4

This power reaches its apex in the primary context. Tashjian, 479 U.S. at 216 ("selecting the Party's candidates" is the "critical juncture at which the appeal to common principles may be translated into concerted action, and hence political power in the community"). Indeed, "[i]n no area is the political association's right to exclude more important than in the process of selecting its nominee . . . ." See Jones, 530 U.S. at 575.

For example, to help prevent "party raiding,"[4] the Supreme Court has upheld against a constitutional challenge a New York law that required voters wishing to vote in New York's "closed" primary elections to have enrolled in the party of their choice at least thirty days prior to the previous general election. See Rosario v. Rockefeller, 410 U.S. 752, 760-62 (1973)). More recently, in California Democratic Party v. Jones, the Court invalidated California's "blanket" primary, "reasoning that it [unconstitutionally] permitted non-party-members to determine the candidate bearing the party's standard in the general election." See Lopez Torres, 552 U.S. at 203 (citing Jones, 530 U.S. at 575).[5] Jones, in no uncertain terms, held that a political party's interest in excluding non-members trumps a non-member's interest in sharing in the party's nominating process. See 530 U.S. at 583 ("a 'nonmember's desire to participate in the party's affairs is overborne by the countervailing and legitimate right of the party to determine its own

---

[4] Party raiding occurs where voters "in sympathy with one party designate themselves as voters of another party so as to influence or determine the results of the other party's primary." Rosario v. Rockefeller, 410 U.S. 752, 760 (1973).

[5] As the Supreme Court explains, "blanket" and "open" primaries are fundamentally different. In the former, "each voter's primary ballot . . . lists every candidate regardless of party affiliation and allows the voter to choose freely among them." Jones, 530 U.S. at 570. In the latter, "any registered voter can vote in the primary of either party." Democratic Party of U.S. v. Wis. ex rel. La Follette, 450 U.S. 107, 111 n.4 (1981) (internal quotation omitted). In other words, the choice of candidate in an "open" primary is more circumscribed, in that the voter's "choice is limited to [one] party's nominees *for all offices*. [An open primary voter] may not, for example, support a Republican nominee for Governor and a Democratic nominee for attorney general." Jones, 530 U.S. at 576 n.6 (emphasis in original).

membership qualifications'" (quoting Tashjian, 479 U.S. at 215 n.6)).  As the Second Circuit has concluded, after surveying Jones and other relevant precedent, "[b]ecause political parties have a strong associational right to exclude non-members from their candidate nomination process, [individuals seeking non-member participation in partisan primaries] have no constitutional right pursuant to which such participation may be effected."  Maslow, 658 F.3d at 296.

     Plaintiffs in this case believe otherwise.  Indeed, their entire lawsuit – at least the federal portion of it – proceeds from the premise that all registered voters have a fundamental right to vote in the primary elections conducted by political parties they are not members of.  (See Opp. Br. at 18.)  This is, however, not the law.  The Supreme Court has drawn an important distinction between casting a ballot in a general election, which implicates the "fundamental" right to vote, and nominating a candidate for general election, which does not.  According to the Court in Jones, "[s]electing a candidate is quite different from voting for the candidate of one's choice.  If the 'fundamental right' to cast a meaningful vote were really at issue in this context [*i.e.*, the primary election], Proposition 198 [California's blanket primary law] would not only be constitutionally permissible but constitutionally required, which no one believes."  See 530 U.S. at 573 n.5.  Plaintiffs do not cogently explain how their claim that a closed primary abridges the "right to a meaningful vote" survives this pronouncement.  See also Nader v. Shaffer, 417 F. Supp. 837 (D. Conn.) (three-judge panel) (rejecting non-party member's challenge to Connecticut's closed primary system and drawing distinction between participating in primary nomination process and voting in general election), aff'd, 429 U.S. 989 (1976); Ziskis v. Symington, 47 F.3d 1004, 1006 (9th Cir. 1995) (citing Nader to reject similar challenge to Arizona's "closed party primary system")

6

Plaintiffs instead cite to the Supreme Court's decision in United States v. Classic, 313 U.S. 299 (1941), in which the federal government prosecuted certain Louisiana state elections commissioners for allegedly falsifying ballots in the Democratic House of Representatives primary. Classic held that the Constitution gives Congress the power to regulate intraparty primaries through the Criminal Code and secures the right to have one's "vote counted in both the general election and in the primary election, where the latter is a part of the election machinery . . . ." See id. at 322. Seizing on language used in that case, Plaintiffs here contend that "[t]he right to a meaningful vote includes voting at the primary stage, where the primary is an integral part of the electoral process." (Opp. Br. at 18.)

And this statement is true, as far as it goes. Indeed, the proposition that all primary votes cast should count equally, be undiluted, etc. is noncontroversial. Classic, however, does not extend as far as Plaintiffs would stretch it. Classic itself presupposes that the right it acknowledges only applies to voters who were "qualified" to cast votes in Louisiana's Democratic primary. 313 U.S. at 307 (stating that one of the "questions for decision [is] whether the right of qualified voters to vote in the Louisiana primary and to have their ballots counted is a right 'secured . . . by the Constitution' within the meaning of . . . the Criminal Code"). But Classic does not expound on who is "qualified," instead leaving that distinction up to Louisiana state law. See id. at 311 ("Pursuant to the authority given by § 2, Article I of the Constitution . . . the states are given, and in fact exercise a wide discretion in the formulation of a system for the choice by the people of the representatives in Congress."). In other words, Classic speaks to the constitutional protections that obtain once a primary vote is cast, but is silent as to who under state law has the right to cast one. The decision is therefore of little help to Plaintiffs here.

7

Also puzzling is Plaintiffs' citation to Friedland v. State, 374 A.2d 60, 63 (N.J. Sup. Ct. App. Div. 1977), for the proposition that the right to cast a primary vote is "as protected as voting in the general election." (See Opp. Br. at 18.) Friedland in fact rejected the exact same challenge to N.J. Stat. Ann. § 19:23-45 Plaintiffs advance here, and after applying rational basis review held that the Constitution allows New Jersey to require voters to affiliate with a political party before participating in a primary election. See 374 A.2d at 63-64 (citing Rosario, 410 U.S. 752, and Nader, 417 F. Supp. 837). More puzzling is that Plaintiffs would cite to any New Jersey law on this topic at all; the New Jersey Supreme Court has held that New Jersey's closed partisan primary system passes both federal and state constitutional muster. Smith v. Penta, 405 A.2d 350, 353 (N.J.) ("Rosario and Nader make it abundantly clear that the New Jersey statute under attack [N.J. Stat. Ann. § 19:23-45] suffers from no federal constitutional infirmity."), appeal dismissed, 444 U.S. 986 (1979); Lesniak v. Budzash, 626 A.2d 1073, 1080-81 (N.J. 1993).

As the foregoing reveals, Plaintiffs base their federal case on what they believe is their unfettered right to participate in the process that New Jersey has established for its major political parties to choose their general election candidates. But this is not a right at all, and if the Plaintiffs had their way, rending open New Jersey's exclusionary primary system against the will of the State would likely tread upon associational rights that have been enshrined by a long and increasingly firm line of Supreme Court precedent.

Thus, whatever guise the Plaintiffs' federal constitutional claims take – right to vote, right to associate or not associate, or right to equal protection – there is no reason here to impose any level of heightened scrutiny to N.J. Stat. Ann. § 19:23-45. See Clingman v. Beaver, 544

U.S. 581, 592 (2005) ("There must be more than a minimal infringement on the rights to vote and of association . . . before strict judicial review is warranted." (quoting Nader, 417 F. Supp. at 849)).  The Supreme Court has made it clear that elections laws that impose only minimal burdens on individual rights logically "trigger less exacting review, and a State's 'important regulatory interests' will usually be enough to justify 'reasonable, nondiscriminatory restrictions.'"  See Timmons v. Twin Cities Area New Party, 520 U.S. 351, 358 (1997) (quoting Burdick v. Takushi, 504 U.S. 428, 434 (1992)); see also Hooks, 179 F.3d at 71 ("When the election regulation imposes a lesser burden . . . it need only be justified by important state regulatory interests.").  The regulatory interests implicated in this case are no different than those which have been cited to uphold elections laws in earlier cases – including the prevention of "party raiding" so as to preserve "the integrity of the electoral process," Rosario, 410 U.S. at 760-61, and "preserv[ing] [political] parties as viable and identifiable interest groups," Clingman, 544 U.S. at 594 (quoting Nader, 417 F. Supp. at 845).  Plaintiffs fail to suggest a reason in law or logic why these considerations do not govern this case, considering the *de minimis* effect that N.J. Stat. Ann. § 19:23-45 has on their constitutional rights.

  Consequently, New Jersey's closed partisan primary system passes muster under the Constitution, and because Plaintiffs cannot state viable claims on the theories presented, the federal causes of action must be dismissed.[6]  Fed. R. Civ. P. 12(b)(6).

---

[6] The Court recognizes that two of the named Plaintiffs are registered Republicans, and one is a registered Democrat.  Those Plaintiffs, however, do not in this case assert the associational rights of their respective political parties; because these Plaintiffs allege they chose to register with the two parties strictly to vote in those parties' primaries, they are effectively asserting their own rights as independent voters with this lawsuit.  (Compl. ¶ 26 ("These plaintiffs were required to forfeit their First Amendment right to not affiliate with a private organization in order to vote in the State's primary elections.").)  This case is therefore dissimilar to Tashjian, in which the Supreme Court sustained the Republican Party's as-applied challenge to Connecticut's closed-primary law on the grounds that the law limited "the group of registered voters whom the Party

B.  **State Law Claims**

Defendants are correct that the Eleventh Amendment operates to bar Plaintiffs' state law official capacity claims against Defendant.[7]  The Court is therefore without subject matter jurisdiction to hear those claims.

None of the three limited exceptions to state sovereign immunity – "congressional abrogation," "waiver by the state," and "the doctrine of Ex parte Young" – are present here.  See Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002).  Plaintiffs do not invoke congressional abrogation, nor do they argue that New Jersey has expressly waived its federal immunity to suit under the New Jersey Constitution or the New Jersey Civil Rights Act. Insofar as Plaintiffs opposition brief can be read to invoke an argument that the Ex parte Young doctrine applies, such an argument would be misguided– "[t]he theory behind Young is that a suit to halt the enforcement of a state law in conflict with the federal constitution is an action against the individual officer charged with that enforcement," and is thus not really a suit against the state itself.  MCI Telecomm. Corp. v. Bell Atlantic Pa., 271 F.3d 491, 506 (3d Cir. 2001) (citing 209 U.S. 123, 159-60 (1908)).  Claims premised upon New Jersey's state constitution and its civil rights statute, even if they are for prospective injunctive relief, could not by definition fit under the Young exception.  See Hess, 297 F.3d at 325 ("[I]t is difficult to think of a greater

---

may invite to participate in the basic function of selecting the Party's candidates." See 479 U.S. at 215-16.  In other words, Tashjian is an "analytically distinct" case where there was "no conflict between the associational interest of members and nonmembers" – the conflict in that case being between Connecticut's closed primary law and the Republican Party's associational interest in welcoming unaffiliated voters into the fold.  Ziskis, 47 F.3d at 1005 (quoting Tashjian, 479 U.S. at 215 n.6).  Here, Plaintiffs' attempt to inject outsiders into otherwise closed party primaries conflicts directly with the right not to associate (and therefore exclude) held by members of those parties.

[7] Because the Court disposes of the state law claims on sovereign immunity grounds, it need not reach Defendant's standing argument – both are effectively determinations that the Court lacks subject matter jurisdiction over the claims, and thus one need not be considered before the other.

intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." (quoting Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 106 (1984))).

It is unclear why in this context Plaintiffs principally rely City of Chicago v. International College of Surgeons, 522 U.S. 156 (1997), a case that has nothing to do with sovereign immunity. Plaintiffs assert that City of Chicago stands the proposition that a "state law claim can be considered to 'arise under'" federal law when the state law "right to relief . . . requires resolution of a substantial question of federal law." (Opp. Br. at 32 (citing 522 U.S. at 164).) But this rule of federal question jurisdiction – most recently refined in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308 (2005), and Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677 (2006) – has nothing to do with whether or not New Jersey can be sued in federal court for violations of state law. If Plaintiffs cite to City of Chicago to argue their state law claims are of the "special and small category" which present "an important issue of federal law that sensibly belongs in federal court," see Empire Healthchoice, 547 U.S. at 699-700, Plaintiffs are belied by their own Complaint – Plaintiffs have affirmatively pleaded their state law claims are supplemental or pendent, and only before the Court pursuant to 28 U.S.C. § 1367. (Compl. ¶ 9; Opp. Br. at 28 ("Count VII deals with the violations of the New Jersey state constitution brought under supplemental jurisdiction").) And, if Plaintiffs mean to argue that their federal claims are somehow intertwined with their entirely distinct state constitutional claims, such that Ex parte Young is implicated, Plaintiffs cite no legal authority for this novel proposition.

What is instead reasonably clear is that this Court cannot entertain an official capacity lawsuit based on New Jersey law and initiated by private parties while also remaining faithful to the Eleventh Amendment. Consequently, Plaintiffs' state law claims must be dismissed.[8]

## CONCLUSION

For the foregoing reasons, the Court will grant the motion to dismiss filed by Defendant Kim Guadagno. [Docket Entry 11.] An appropriate form of Order accompanies this Opinion.

    s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: August 14th, 2014

---

[8] The Court notes that it appears the fundamental right to vote claim brought pursuant to the New Jersey Constitution (Count 4) is foreclosed by New Jersey law. The New Jersey Supreme Court has in no uncertain terms decided that N.J. Stat. Ann. § 19:23-45 does not violate New Jersey's constitutional right to vote. Smith, 405 A.2d at 357 ("Suffice it to say that the two-party system, including a closed primary with durational affiliation requirements such as we have in New Jersey, characterizes the governments of most states. If it is to be changed, the change must come from the legislature or from the people. It cannot come from the courts.").